# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-20254-JTF/tmp |
| | ) | |
| ANTONIO COACH and LORENZO SEABERRY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Before the court by order of reference are (1) defendant Antonio Coach's Motion to Suppress, filed on February 27, 2017 (ECF No. 31), and (2) defendant Lorenzo Seaberry's Motion to Suppress, filed on March 16, 2017 (ECF No. 40).[1] The government responded in opposition to each motion on April 3, 2017. (ECF Nos. 45 and 46.) The court held a suppression hearing on April 19, 2017. (ECF No. 51.) Detective Robert M. Christian of the City of Bartlett Police Department testified at the hearing. The court admitted into evidence the search warrant at issue as Exhibit No. 1 and a Bartlett Police Narcotics Unit Report of Investigation as Exhibit No. 2.

---

[1]On April 19, 2017, Coach filed a document styled as an Amended Motion to Suppress (ECF No. 50) for the purpose of raising an additional ground for a Franks hearing that was not raised in his original motion to suppress.

The court has now considered the memoranda of law in support of and in opposition to the motions to suppress, the testimony of Detective Christian, the exhibits, and the applicable law. The court hereby submits the following proposed findings of fact and conclusions of law, and recommends that the motions to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

### A. The Events Prior to March 21, 2016

On February 27, 2016, troopers with the Arkansas State Police pulled over a Chevrolet Impala being driven by Jorge Gamez (referred to at the hearing as Jose Gamez). (Hr'g Tr. 29-31, 44; Hr'g Ex. 1.) During the traffic stop, the troopers seized 194 pounds of marijuana from the vehicle. (Hr'g Tr. 29.) Gamez stated that he was traveling from Dallas, Texas to the Memphis area. (Id. at 31.) The troopers determined that the vehicle was registered to Antonio Coach at 2349 Curbertson in Bartlett, Tennessee ("Curbertson residence"). (Id. at 30-31.) This information was relayed to Detective Robert M. Christian of the City of Bartlett Police Department on March 4, 2017, by way of an intelligence communique from the Arkansas State Police (the "communique"). (Id. at 26, 29, 44.) Upon receipt of the communique, Detective Christian initiated an investigation into Coach. (Id. at 30, 33.) Detective Christian verified through a records check that the Curbertson residence was Coach's listed

home address.

On March 17, 2016, Detective Christian drove by the Curbertson residence and observed two trash cans on the curb. (Id. at 32-35.) On the morning of Friday, March 18 (which was the designated weekly trash collection day for that residence), Detective Christian along with another officer returned to Coach's residence and conducted a trash confiscation by pulling a few bags from the trash cans, removing them from the scene, and examining their contents (the "trash pull"). (Id. at 34-36.) In the trash, the officers found multiple Ziploc bags (quart-size and gallon-size) and trash bags, each containing marijuana residue. (Id. at 36.) Detective Christian collected the marijuana residue from each bag, which in total weighed 55.8 grams. (Id. at 37.) Detective Christian considered this to be an excessive amount of marijuana for someone to discard, which indicated to him that drug distribution was occurring inside the Curbertson residence. (Id. at 37.) He believed the Ziploc bags were also indicative of drug distribution. (Id. at 39.) Detective Christian testified that the trash pull did not reveal any evidence of personal marijuana use. (Id. at 94.) The officers also found two items of mail tying Coach to the Curbertson residence, as well as the "backing" (i.e., packaging)

for one PayPal card and two prepaid wireless cards.² (Id. at 36, 42.) Detective Christian testified that these types of cards are commonly used by dealers of bulk quantities of illegal drugs. (Id. at 40.)

**B. The Search Warrant**

On March 21, 2016, Detective Christian swore out an affidavit for a search warrant for the Curbertson residence, seeking "marijuana and other illegal drugs, drug paraphernalia, records and proceeds from the sale of illegal drugs." (Hr'g Ex. 1 at 2.) Paragraphs 1 and 2 describe Detective Christian's background and his general knowledge of drug trafficking practices based on his experience. (Id. at 1.) Paragraph 3 states: "During March 2016, the City of Bartlett Police Department Narcotics Unit, initiated an investigation into the illegal drug trafficking activities by Antonio Onard Coach after receiving an intelligence communique from the Arkansas State Police via DEA TFO Dustin Adair regarding Coach distributing large quantities of marijuana." (Id.) Paragraph 4 states that Detective Christian personally conducted the investigation and was familiar with the facts in the affidavit. (Id.) Paragraphs 5 through 9 state:

> 5. Arkansas State troopers advised via their communique that on February 27, 2016, they conducted a

---
²The government does not dispute that card backings, and not cards, were found during the trash pull. (Hr'g Tr. 23.)

-4-

traffic stop of a 2014 Chevrolet Impala bearing TN tag U14-09P. Registration records show this vehicle belongs to Antonio Coach at 2349 Curbertson in Bartlett, TN. The Chevrolet Impala was being driven by an illegal alien from Mexico identified as Jorge Luis Gamez who told troopers he was travelling from Dallas, TX to his home in Memphis, TN. Over the course of the contact, troopers discovered 194 pounds of marijuana in the Chevrolet Impala registered to Coach.

6. Acting pursuant to this information, a trash confiscation was conducted on March 18, 2016 by Detective Christian and Lt. Leppanen. This was the normal day of collection and the cans had been placed curbside for collection.

7. Located in the trash cans were the following items:

    a) Three (3) quart size Ziploc style plastic bags
    b) Two (2) gallon size Ziploc bags
    c) Six (6) 40 gallon sized trash bags
    d) One doubled lined kitchen trash bag

8. In each of these bags was marijuana residue. I was able to collect the marijuana residue from each of these bags and weigh it. The marijuana recovered from these bags was determined to weigh a total of 55.8 grams gtw and did test positive for THC.

9. Also located in the trash were two (2) items of mail addressed to Antonio Coach at 2349 Curbertson along with several pre-paid cards. These cards are often used by dealers of illegal drugs to conceal the proceeds of those drugs and to fund their communications using pre-paid wireless cell phones.

(Id. at 2.) The warrant was issued on March 21 and executed that same day. The search uncovered, among other things, marijuana, cash, and drug paraphernalia. (See Hr'g Ex. 2 at 3-5.) The search also uncovered a number of items tying defendant Lorenzo Seaberry to the residence, including: a letter addressed

to Seaberry at the Curbertson residence advising him of a telephone interview with a welfare agency; a television receipt showing payment by Seaberry for a television from EZ Rental, along with a television from EZ Rental in the living room; an ADT rebate check addressed to Seaberry at the Curbertson residence; a Direct TV bill addressed to Seaberry at the Curbertson residence; numerous prescription pill bottles that displayed Seaberry's name; and clothing that apparently belonged to Seaberry. (Id. at 4; see also Hr'g Tr. 85-88.)

**C. Motions to Suppress**

In their motions to suppress, the defendants contend the search of the Curbertson residence was illegal because the search warrant affidavit did not establish probable cause. Therefore, they argue the evidence seized from the residence and any fruits of that alleged illegal search should be suppressed. They further contend that certain portions of paragraphs 3 and 9 of the search warrant affidavit are false or misleading and should be stricken pursuant to Franks v. Delaware, 438 U.S. 154 (1978). In response, the government argues that the search warrant affidavit established probable cause and that the defendants have not shown they are entitled to a Franks hearing. In addition, the government argues that even if the court were to find the warrant to be invalid, the motions should be denied pursuant to United States v. Leon, 468 U.S. 897 (1984), because

the detectives acted in good faith.[3] (ECF Nos. 45 at 4; 46 at 5.) The government further asserts that Seaberry has not established standing to challenge the search of the residence.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Seaberry's Expectation of Privacy

As a threshold issue, the government argues that Seaberry must demonstrate "standing" to challenge the search of the Curbertson residence by establishing that he had a legitimate expectation of privacy in the home.[4] "When challenging the admission of evidence under the Fourth Amendment, it is the defendant's burden to show that he had a legitimate expectation of privacy in the area searched or items seized." United States v. Mathis, 738 F.3d 719, 729 (6th Cir. 2013) (citing United States v. Mastromatteo, 538 F.3d 535, 544 (6th Cir. 2008)). If the defendant does not meet this burden, he "lacks standing for

---

[3]Because, as described later, the court finds that the search warrant affidavit contained sufficient probable cause to support the search warrant, the court need not address the government's Leon good-faith exception argument.

[4]The Sixth Circuit has recognized that "[s]tanding to challenge a search or seizure is a matter of substantive Fourth Amendment law rather than of Article III jurisdiction." United States v. Dyer, 580 F.3d 386, 390 (6th Cir. 2009) (citation and internal quotation marks omitted); see also United States v. Smith, 263 F.3d 571, 581–82 (6th Cir. 2001) (explaining that although the inquiry into whether a defendant has the right to challenge a search under the Fourth Amendment is often referred to as a question of "standing," the issue is actually one of substantive Fourth Amendment law and whether a defendant can prove a legitimate expectation of privacy as a prerequisite to challenging police conduct).

his challenge." Id. In order to make this showing, a defendant "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ." United States v. Noble, 762 F.3d 509, 526 (6th Cir. 2014) (quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998)); see also United States v. Washington, 573 F.3d 279, 282-83 (6th Cir. 2009) (citing United States v. Pollard, 215 F.3d 643, 647 (6th Cir. 2000)) ("[T]he defendant must show (1) that he had a subjective expectation of privacy, and (2) that his expectation was objectively reasonable."). "An expectation is objectively reasonable only when it is one that society is prepared to recognize as legitimate." Washington, 573 F.3d at 283 (internal quotation marks omitted). The Sixth Circuit has stated that "[a] person may acquire a reasonable expectation of privacy in property in which he has neither ownership nor any other legal interest." Id. at 283 n.1 (citing Minnesota v. Olson, 495 U.S. 91, 96-97 (1990) (holding that a person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable")).

In this case, the officers found several pieces of mail addressed to Seaberry at the Curbertson residence, including mail indicating that Seaberry pays bills for services at the residence. (Hr'g Ex. 2 at 4.) They also discovered numerous

personal items belonging to Seaberry, including a television, prescription bottles, and clothing. (Id.) Based on this evidence, the court finds that Seaberry has established a legitimate expectation of privacy for the Curbertson residence.

**B. Franks**

In Franks v. Delaware, the Supreme Court held that a search based on a warrant that contains deliberately or recklessly false allegations is invalid unless the remaining portions of the affidavit provide probable cause. 438 U.S. at 156. "A Franks hearing is an evidentiary hearing during which defendants are allowed to present evidence concerning the veracity of the challenged statements in the search warrant affidavit." United States v. Kelley, 596 F. Supp. 2d 1132, 1149 (E.D. Tenn. 2009) (citing United States v. Keszthelyi, 308 F.3d 557, 566–68 (6th Cir. 2002)); see also United States v. Brooks, No. 11-cr-20137 Ml/P, 2011 WL 7081072, at *3 (W.D. Tenn. Dec. 8, 2011) ("The purpose of a Franks hearing is to allow the defendant to challenge the truthfulness of statements in an affidavit in order to challenge the legality of a search warrant issued on the basis of the affidavit." (internal quotation marks and citation omitted)). As the Sixth Circuit has explained:

> To obtain a Franks hearing, the movant must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth. The movant must *also* show that the allegedly false statements were

-9-

necessary for the magistrate's determination of probable cause. Therefore, 'if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.'

Mastromatteo, 538 F.3d at 545 (emphasis in original) (quoting Franks, 438 U.S. at 171-72).

The defendants request a Franks hearing, asserting that paragraphs 3 and 9 of the search warrant affidavit are false or misleading. As to paragraph 3, the defendants argue that Detective Christian made a false or misleading statement by inaccurately asserting that the communique contained information about the Arkansas State Police investigating Coach for distributing large quantities of marijuana. In other words, the defendants allege Detective Christian embellished the contents of the communique for the purpose of strengthening probable cause. While the statement at issue could be read as defendants have suggested, the court finds that the statement is not false or inaccurate when read in context with the entire affidavit, and in particular paragraph 5. That paragraph describes in detail the specific facts contained in the communique that provided a basis for believing that Coach could have been involved in large-scale marijuana distribution, which is reflected in paragraph 3. For these reasons, neither defendant has made a substantial preliminary showing that paragraph 3 is a

false statement made knowingly or intentionally, or with reckless disregard for the truth.

As to paragraph 9, the defendants argue that the phrase "several pre-paid cards" is false because the officers did not find any prepaid cards. Rather, they found the "backings" for one PayPal card and two prepaid wireless cards. (Hr'g Tr. 40.) The court finds that the defendants have failed to make a substantial preliminary showing that Detective Christian's reference to prepaid cards, as opposed to card backings, was done intentionally or with reckless disregard for the truth. The affiant had nothing to gain by referencing cards as opposed to backings, as the backings themselves would have been just as relevant as the cards (if not more relevant) as evidence of potential drug trafficking activities.

Finally, even if both of the challenged statements in paragraphs 3 and 9 were to be stricken, the court would nevertheless find that the redacted affidavit would contain ample probable cause to support the search warrant. See Keszthelyi, 308 F.3d at 567. Even without paragraph 3 and the portion of paragraph 9 relating to the prepaid cards, the affidavit would still contain the following information: 194 pounds of marijuana was discovered in a vehicle traveling from Dallas to Memphis; the vehicle was registered to Coach at the Curbertson residence; a trash pull conducted three weeks later

-11-

uncovered several Ziploc bags containing marijuana residue; the marijuana residue weighed a total of 55.8 grams; and mail was discovered tying the drug-related items found in the trash to the Curbertson residence. This information alone is sufficient to establish probable cause to search the residence. The additional information in paragraphs 3 and 9 would be superfluous to a probable cause finding. For all of these reasons, the court finds that neither defendant has made the necessary substantial preliminary showing for a Franks hearing.

**C. Probable Cause**

The defendants argue that the search of the Curbertson residence violated their Fourth Amendment rights because the search warrant was not supported by probable cause. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To determine if probable cause exists, the task of the issuing judicial officer is "to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Franklin, 622 F. App'x 501, 508 (6th Cir. 2015). "The standard

of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" United States v. Greene, 250 F.3d 471, 478 (6th Cir. 2001) (quoting United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991)); see also United States v. Ugochukwu, 538 F. App'x 674, 678 (6th Cir. 2013). Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny. United States v. Baechtle, No. 2:13-cr-20054-SHM, 2015 WL 893348, at *7 (W.D. Tenn. Mar. 2, 2015) (citing United States v. Johnson, 351 F.3d 254, 258 (6th Cir. 2003)). Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. United States v. Brooks, 594 F.3d 488, 492 (6th Cir. 2010).

As discussed above, the affidavit states that a vehicle registered to Coach at the Curbertson residence, on its way from Dallas to Memphis, was stopped in Arkansas with 194 pounds of marijuana. A trash pull revealed two items of mail addressed to Coach at the Curbertson residence and a significant amount of marijuana residue inside Ziploc bags. (Hr'g Ex. 1 at 2.) This information was sufficient for a judicial officer to make a practical, commonsense determination that there was probable cause to conclude that "marijuana and other illegal drugs, drug

paraphernalia, records and proceeds from the sale of illegal drugs" would be found inside the residence.

The defendants argue that by the time the search warrant was issued on March 21, the information regarding the February 27 vehicle stop by the Arkansas State Police had become stale. This argument is without merit. "[T]he probable cause determination cannot be measured in a vacuum, but rather must be viewed together and in totality with the events immediately preceding the search. Recent events can serve to refresh otherwise stale information[.]" United States v. Redmond, 475 F. App'x 603, 610 (6th Cir. 2012) (internal citations omitted). Here, a large amount of marijuana residue and other items indicative of a marijuana distribution operation were found in the trash cans in front of the Curbertson residence three days prior to the issuance of the affidavit. This evidence of recent drug distribution activity would clearly refresh any arguable staleness concerns.

The defendants also argue that the trash pull was insufficient to establish a nexus to the residence. A search warrant affidavit must demonstrate a "nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting United States v. Van Shutters, 163 F.3d 331, 336-37 (6th Cir. 1998)). At the outset, the defendants assert categorically that

"[e]vidence obtained from a trash pull is not sufficient to establish probable cause for the search of a residence." (ECF No. 40 at 4 (citing United States v. Abernathy, 843 F.3d 243, 256 (6th Cir. 2016)); see also Hr'g Tr. 102 (Coach's counsel arguing that "the courts clearly state that a trash pull is not enough for probable cause to go into someone's house").) The defendants' interpretation of Abernathy is incorrect:

> We do not hold that drug paraphernalia recovered from a trash pull can *never* establish probable cause to search a residence without additional corroborating evidence. For example, as we have noted, a particularly large quantity of drug refuse in a residence's garbage may suggest repeated and ongoing drug use in the residence sufficient to establish a fair probability that drugs will be found inside. We merely hold that the evidence recovered from the garbage outside of Defendant's residence was insufficient to establish probable cause.

Abernathy, 843 F.3d at 256 n.4 (emphasis in original). More importantly, Abernathy does not control the outcome of this case, because unlike the search warrant at issue in Abernathy, the search warrant affidavit for the Curbertson residence included corroborating information from the communique.[5] See Abernathy 843 F.3d at 251-52 (listing cases for the proposition that it "is well established in this Circuit that drug paraphernalia recovered from a trash pull establishes probable

---

[5] The defendants contend that the trash pull was unreliable because there is no information as to how long the trash cans had been sitting on the curb or who placed them there. None of these speculative concerns call into question the sufficiency of the probable cause established by the affidavit.

cause to search a home when combined with other evidence of the resident's involvement in drug crimes").

### III. RECOMMENDATION

For the reasons above, it is recommended that the motions to suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

June 6, 2017
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**